**Charissa McKINNON and Beatrice Poulin, Plaintiffs–Appellees,**

v.

**KWONG WAH RESTAURANT, et al., Defendants–Appellants.**

**Charissa McKINNON and Beatrice Poulin, Plaintiffs–Appellants,**

v.

**KWONG WAH RESTAURANT, et al., Defendants–Appellees.**

No. 95–1597, 95–1635.

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1996.

Decided May 1, 1996.

---

Daniel L. Lacasse, Calais, ME, for Kwong Wah Restaurant, et al.

Catherine R. Connors, with whom Fall Ferguson and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, were on brief for Charissa McKinnon and Beatrice Poulin.

Before TORRUELLA, Chief Judge, COFFIN and ROSENN,* Senior Circuit Judges.

ROSENN, Circuit Judge.

This appeal and cross-appeal present several procedural issues as well as substantive issues relating to damages arising out of alleged acts of sexual harassment in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Charissa McKinnon and Beatrice Poulin brought suit in the United States District Court for the District of Maine against their former employer, the Kwong Wah Chinese Restaurant ("Kwong Wah"), its owners, and several current and former employees. The plaintiffs alleged that they suffered sexual harassment while working as waitresses at Kwong Wah, in violation of Title VII; the Maine Human Rights Act, 5 M.R.S.A. § 4572; and state tort law.[1]

The court entered default judgment against the defendants, and awarded back pay, compensatory damages and attorneys'

fees to both plaintiffs. The defendants filed a Motion to Lift the Default and File Late Answer, which the court denied. McKinnon and Poulin appeal the district court's damages awards. Specifically, they assert that the court erred in its failure to award punitive damages, and in its calculation of compensatory damages. The defendants appeal the court's denial of their motion to lift default and file late answer. Further, they assert that the district court lacked jurisdiction over some of the named defendants, because plaintiffs failed to name the individual defendants before the Equal Employment Opportunity Commission ("EEOC"). We affirm, except we remand for clarification by the district court with respect to punitive damages.

I.

Both plaintiffs commenced employment as waitresses at the Kwong Wah Restaurant in Calais, Maine in July 1991. Plaintiffs testified that the owners and employees at Kwong Wah subjected them to repeated offensive sexual harassment, both verbal and physical. Plaintiff McKinnon further alleged that they subjected her to additional discrimination because she was pregnant while employed at Kwong Wah. McKinnon testified that one of the restaurant owners tried to force her to sign a release exempting the Kwong Wah from liability if she was injured on the job, and that the Kwong Wah cut back her working hours in retaliation for her refusal to sign the release. The plaintiffs alleged that they were constructively discharged in July 1992.

Plaintiffs filed timely charges of discrimination with the Maine Human Rights Commission ("MHRC") and the federal Equal Employment Opportunity Commission. The MHRC determined that reasonable grounds existed to believe that unlawful discrimination had occurred. After failed attempts at a conciliation agreement, the MHRC autho-

---

* Of the Third Circuit, sitting by designation.

1. In their Complaint, the plaintiffs alleged the following: Count I—sexual harassment in violation of Title VII; Count II—further violations of Title VII for discriminating against McKinnon for her pregnancy; Counts III and IV—violations of the Maine Human Rights Act; Count V—Intentional Infliction of Emotional Distress; Count VI—Negligent Retention or Supervision; Count VII—Assault and Battery; and Count VIII—Invasion of Privacy.

rized suit, and the EEOC issued a right to sue letter.

Plaintiffs filed a complaint on June 28, 1994, and an amended complaint with minor changes on July 7, 1994. Thus, pursuant to Fed.R.Civ.P. 12(a)(1)(A), Kwong Wah's Answer was due on August 18, 1994. The defendants, however, did not respond by the due date. One week after the answer was due, the defendants moved for an enlargement of time to respond to the complaint. The district court extended the due date to September 28, 1994. Again, the defendants did not file an answer. On September 27, 1994, the defendants moved for an additional extension; the court denied the motion. The defendants took no action subsequent to the denial. The clerk of the court entered default against the defendants on October 11, 1994. · The defendants again took no action. On October 24, 1994, the plaintiffs moved for the entry of default judgment; the court granted the motion the next day. One month later, November 25, 1994, defendants moved to lift the default judgment.

In their motion to lift the default, the defendants claimed that they had difficulty in retaining counsel; that counsel did not keep them informed of their obligations to file a timely answer; and that their inability to ·understand the complaint rendered them unable to respond. In reply, the plaintiffs asserted that the defendants hired and fired counsel as a delaying tactic. The plaintiffs further alleged that defendants' counsel contacted defendants by phone and letter alerting them to their obligation to file a timely answer. The court held a hearing on the issue, and found that the defendants did not meet their burden of showing good cause to set aside the default. *See* Fed.R.Civ.P. 55(c) (court may set aside default for good cause).

In addition, the defendants moved to dismiss the plaintiffs' Title VII claims against the individual defendants named in the suit. The defendants asserted that the court lacked jurisdiction to hear the matter because the plaintiffs failed to include the named defendants in the charges they had filed with the MHRC and EEOC. The court denied the motion, holding that Title VII's charging requirements were nonjurisdictional. The court found that the defendants waived their right to raise the charging issue by their default.

The district court held a hearing without a jury to determine damages, and awarded $13,094.84 to McKinnon, and $13,189.45 to Poulin, plus attorneys' fees. The award included 135 weeks of back pay (adjusted for mitigation) and $2,500 per plaintiff in compensatory damages. The court declined to award front pay, punitive damages, or prejudgment interest.

## II.

■ The defendants claim that the district court erred in denying their motion to lift default judgment and file late answer. We must review the court's denial of the motion for an abuse of discretion. *See The General Contracting & Trading Co. v. Interpole,* 899 F.2d 109, 112 (1st Cir.1990) (motions to set aside default judgments are left to "the sound discretion of the district court"). This court may not reverse unless the district court's decision is clearly wrong. *Id.* at 112.

Fed.R.Civ.P. 55(c) provides:

**(c) Setting Aside Default.** For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).[2]

The parties in the instant case offer differing accounts of the events leading up to the default judgment. The plaintiffs filed their amended complaint in July 1994. They contend that the defendants ignored the first due date for their answer, requested and were granted a thirty day extension, and then ignored the second due date. The plaintiffs further contend that the defendants ignored the court's rejection of their request for a second extension; ignored the plaintiffs' motion for default judgment; ignored the entry of default judgment; and waited until November 25, 1994 to file a motion to lift the

---

**2.** Fed.R.Civ.P. 60(b) provides, in relevant part, relief from judgment or order for mistake, inadvertence, surprise, or excusable neglect.

default judgment. According to the plaintiffs, the defendants switched attorneys on several occasions beginning with the administrative proceedings before the MHRC. Finally, the plaintiffs contend that the evidence shows that defendants were fully aware of all due dates. In sum, the plaintiffs argue that the defendants neglected the suit with full awareness of the legal consequences. In contrast, the defendants claim that they were unable to retain suitable counsel, and that they were not aware of the due dates or the consequences of missing the due dates.

At an evidentiary hearing, the district court found that the defendants did not demonstrate the necessary "good cause" pursuant to Fed.R.Civ.P. 55(c). In addressing the defendants' counsel at the hearing, the court asserted:

> What the defendants have done in their actions, Mr. Lacasse, speaks so loudly that I have difficulty hearing your voice today in this proceeding. There simply has not been a showing of good cause pursuant to Federal Rule 55C to set aside the entry of default. There has been no reasonable excuse presented for the default. There have been a lot of explanations as to the defendants' inability to understand what's going on and the fact that they haven't had any—that they didn't have any funds and the result of all the testimony and the affidavits and the presentation to the court leaves the court with the clear understanding that the defendants did not act reasonably even under these circumstances.

The defendants assert that the record does not support the court's decision: thus, the court abused its discretion.

Although in *Coon v. Grenier*, 867 F.2d 73 (1st Cir.1989), this court observed that "good cause" is a mutable standard, varying from situation to situation, it is "not so elastic as to be devoid of substance." *Id.* at 76. No precise formula is suggested, for each case necessarily turns on its own unique facts. Nonetheless, this court found some general guidelines that appear to have universal application and warrant consideration by a district court in determining whether a default judgment should be lifted: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary, (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion. *Id.* at 76. The court then noted that in reviewing the district court's weighing of these factors for an abuse of discretion, judicial discretion has limitations:

> Judicial discretion is necessarily broad— but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Id.* at 78 (quoting *Independent Oil & Chemical Workers v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988)).

■ The record shows that the plaintiffs served each named defendant with the complaint. Further, the record reflects that at least some of the defendants were aware of pending legal problems through their participation in the administrative proceedings before the MHRC. Additionally, it appears that the defendants hired and fired at least three attorneys during the administrative process. The defendants' attorney for the instant appeal at one time represented the defendants before the MHRC. In the Commission's correspondence with the attorney, it stated:

> Would you please inform Kwong Wah officials that I will under no circumstances accept further postponement of this matter? I do not wish to appear harsh towards you. The history with this case, however, has been that each time we approach a critical point ... they hire a new Attorney. You may or may not be aware that you are the third person I have dealings with to date.

Thus, it appears that the defendants were aware of a pending legal problem, were capable of retaining legal counsel, but were uncooperative with their counsel and administrative officials.

The firm of Eaton, Peabody, Bradford and Veague entered an appearance on behalf of all the defendants, and applied for the extensions of the defendants' filing deadlines. The record contains several letters from Eaton, Peabody urging the defendants to contact counsel and notifying them of the need to file an answer with the court by the end of the month.[3]

Thad Zmistowski, an associate with Eaton, Peabody, testified to his attempts, on several occasions, to reach the corporate contact at Kwong Wah by phone. He finally reached Judy Canniff, his contact, on the day before the second deadline for filing an answer. Canniff allegedly informed Zmistowski that the defendants did not have the money to retain Eaton, Peabody, and would proceed on their own. Eaton, Peabody filed a second Motion to Extend the Deadline, and moved the court to withdraw from its representation of the defendants. The court denied the defendants' second request to extend the time of filing on October 5, 1994. As previously stated, the defendants did not respond until November 25, 1994, when they moved to lift the default judgment.

■ The record fully supports the district court's finding that the defendants were aware of the pending legal problem, but hoped that it "would all go away." Thus, the court found that the defendants did not exhibit the good faith necessary to justify the court's lifting of the default judgment. Under the standard set forth in *Coon, supra*, the district court did not abuse its discretion in its denial of the defendants' motion to lift default judgment. After hearing the testimony, the court was not convinced of the defendants' explanation of the default or of their good faith. The court's finding that the defendants defaulted willfully is well supported. Further, the defendants did not move to rectify the situation in a timely

manner. Litigants must act punctually and not casually or indifferently if a judicial system is to function effectively. This court must uphold the district court's decision absent an abuse of discretion. We conclude that the district court exhibited patience and concern for the rights of the parties and did not abuse its discretion in denying the defendants' motion to lift default judgment.

### III.

■ The defendants next assert that the district court lacked jurisdiction over the Title VII claim against all defendants except the Kwong Wah Restaurant because the plaintiffs failed to name the individual defendants in the proceedings before the EEOC.[4] The district court's finding that the charging requirement of Title VII is nonjurisdictional is subject to plenary review. *See In re Extradition of Howard,* 996 F.2d 1320, 1327 (1st Cir.1993).

There are several requirements that a plaintiff must meet, pursuant to Title VII, prior to filing suit in federal court. *See* 42 U.S.C. § 2000e–5. For example, a plaintiff must file a timely EEOC charge against the discriminatory party, and receive notice of a right to sue. *Id.* In addition, a plaintiff generally may not maintain a suit against a defendant in federal court if that defendant was not named in the administrative proceedings and offered an opportunity for conciliation or voluntary compliance. 42 U.S.C. § 2000e–5(f) ("civil action may be brought against the respondent named in the charge").

In the instant case, the plaintiffs named only the Kwong Wah Restaurant in the complaint before the MHRC and the EEOC. The defendants contend that the court must dismiss the Title VII charges against all *individual* defendants (not the Kwong Wah Restaurant) because the plaintiffs failed to

---

3. The letters evidence the attorneys' frustration in trying to pin down the client. Apparently, Eaton, Peabody was concerned that Kwong Wah's insurance would not cover a sexual harassment suit. Thus, the firm requested a $25,000 retainer. The firm was trying to get a commitment from the defendants as to whether they wished to proceed with Eaton, Peabody as counsel.

4. The plaintiffs filed their Complaint in federal court against: the Kwong Wah Restaurant (a Maine corporation); Sarah Elgendi (co-owner of Kwong Wah); Danny Chan (co-owner of Kwong Wah); Joe Lam (supervisor); Karen Landry (head waitress); Karen Wong (Manager); Ming Chen (cook); and Shun Cheung (cook).

name these defendants in the administrative complaint.

In *Curran v. Portland Super. Sch. Committee*, 435 F.Supp. 1063 (D.Maine 1977), the district court held that an employer may not be named in a civil suit unless it was charged before the EEOC. *Id.* at 1073. The court noted that the administrative charging requirement ensures that the defendant has notification of the pending proceedings, and that the requirement furthers the goal of voluntary compliance with Title VII. *Id.* at 1074. The *Curran* opinion noted, however, that the charging requirement is not absolute:

> [S]everal exceptions have been recognized as sufficient to confer jurisdiction over defendants in a civil action who were not named in the EEOC charges. These exceptions are: (1) if there was "substantial identity" between the respondent named in the EEOC charges and defendants in the civil action; (2) if the named respondent acted as the "agent" of the defendant sought to be included in the civil action, at least when the latter defendant had notice of and participated in the conciliation proceedings; and (3) if the defendant is an "indispensable party" under Fed.R.Civ.P. 19 in order to accord complete relief to the parties.

*Id.* at 1074; *see also Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977) (in determining if a plaintiff may proceed against parties not named before EEOC, the court should consider whether the plaintiff could ascertain the role of the unnamed party at the time of the EEOC filing; whether the interests of unnamed party are similar to interests of named party; the prejudice to the unnamed party; and whether the unnamed party has represented to the plaintiff that its relationship with the plaintiff is through the named party.)

In determining whether the defendants waived their right to raise the charging issue, the district court in the instant case found that the requirement was nonjurisdictional. *See* Fed.R.Civ.P. 12(h)(3) (court shall dismiss action if lacking jurisdiction). If the charging requirement is merely a conciliation or compliance procedure prior to filing suit in federal court, it is subject to waiver, estoppel and equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 102 S.Ct. 1127, 1131, 71 L.Ed.2d 234 (1982).

■ In *Zipes*, the Supreme Court held that the *timely filing of an EEOC charge* is not jurisdictional. *Id.* at 392, 102 S.Ct. at 1131. The Court reasoned that the filing requirement is listed in a separate section of Title VII than the section that grants jurisdiction to the district courts. This court has not ruled directly on the charging requirement. It has held, however, that Section 2000e–5(f)(1) is nonjurisdictional. *See Rice v. New England College*, 676 F.2d 9, 10 (1st Cir.1982) (requirement that plaintiff file complaint within 90 days of receipt of right to sue letter is nonjurisdictional). The charging requirement is found in Section 2000e–5(f)(1). Although generally a plaintiff must name a defendant in the proceedings before the EEOC in order to proceed against that defendant in federal court under Title VII, this charging requirement is subject to exceptions. We conclude that the charging requirement is nonjurisdictional, thus subject to waiver, estoppel and equitable tolling. *See Zipes*, 455 U.S. at 392, 102 S.Ct. at 1131; *see also Greenwood v. Ross*, 778 F.2d 448, 450 (8th Cir.1985) (Title VII conditions precedent, including charging requirement, are nonjurisdictional); *Liberles v. County of Cook*, 709 F.2d 1122, 1125 (7th Cir.1983) (same); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir.1982) (same).

■ To avoid waiver, a defendant must assert all affirmative defenses in the answer. *See* Fed.R.Civ.P. 8(a); *see also Knapp Shoes v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1226 (1st Cir.1994) ("Affirmative defenses not so pleaded are waived."). The defendants in the instant case, through their default, waived their right to raise the issue that they were not named in the complaint to the Commission.[5] We perceive no error in the

---

5. In addition, the plaintiffs' Complaint before the Commission alleged "At all relevant times, Defendants Kwong Wah, Danny Chan, Sarah Elgendi, Joe Lam, Karen Wah and Karen Landry were

district court's denial of the defendants' motion to dismiss on jurisdictional grounds.

## IV.

 The plaintiffs appeal the district court's grant of $2500 in compensatory damages. In general, this court will not override a damage determination unless the award is unsupported by the evidence, grossly excessive, or shocking to the conscience. *See Brown v. Freedman Baking Co.*, 810 F.2d 6, 11 (1st Cir.1987); *see also Hall v. Ochs*, 817 F.2d 920, 927 (1st Cir.1987). In the instant case, the plaintiffs assert that the court below did not use the correct legal standard in its determination of damages. Questions of law are subject to plenary review. *See In re Extradition of Howard*, 996 F.2d at 1327.

The damages provisions of 42 U.S.C. § 1981a, part of the Civil Rights Act of 1991, provide for the availability of compensatory damages to victims of intentional discrimination in violation of Title VII. Pursuant to the statute, compensatory damages include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *See* 42 U.S.C. § 1981a(b)(3).

Prior to Congress's enactment of Section 1981a, victims of intentional gender or religious discrimination were only entitled to equitable relief under Title VII. Victims of race discrimination, however, are entitled to compensatory and punitive damages under 42 U.S.C. § 1981a(b)(3). Section 1981a ensures that victims of intentional employment discrimination on the basis of gender or religion are entitled to compensatory, and in certain egregious cases, punitive damages. *See* H.R.Rep. No. 40(I), 102d Cong., 1st Sess. at 64–65 (1991) 1991 U.S.C.C.A.N. 549. Equitable relief continues to be the sole remedy

available under Title VII in disparate impact cases.

At the conclusion of the testimony in the instant case, the court asserted that it was "persuaded" that the plaintiffs suffered emotionally as a result of persistent and extremely offensive sexual harassment at Kwong Wah. Thus, the court found appropriate an award to the plaintiffs of compensatory damages.

 With respect to emotional distress, a plaintiff must demonstrate that an ordinarily sensitive person could have suffered the alleged harm. If the plaintiff meets this burden, then the defendant must "take the victim as he finds her, extraordinarily sensitive or not." *See Theriault v. Swan*, 558 A.2d 369 (Me.1989). *See also Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282 (Me.1987). The court may find, however, that some of the plaintiffs' damages stem from a prior "injury." *See Lovely v. Allstate Ins. Co*, 658 A.2d 1091 (D.Me 1995).[6] The burden is on the defendant to establish a causal relationship between the prior injury and the damages claimed by the plaintiffs. *Id.* at 1092. If the court finds it impossible to apportion the damages, then the defendants are liable for the entire amount. *Id.*

The testimony in the instant case revealed that both plaintiffs were suffering from emotional distress caused by sources independent from their employment at Kwong Wah. Plaintiff McKinnon separated from her boyfriend (now husband) during her employment at the restaurant, after discovery of her unplanned pregnancy. Plaintiff Poulin testified to having been sexually abused by her stepfather from when she was five years old until she was age seventeen. She commenced employment at the Kwong Wah at the age of twenty. In weighing the evidence the court

---

employers, and the plaintiffs employees, covered by and within the meaning of Title VII. "When a court enters a default judgment against a defendant, all allegations in the complaint must be taken as true." *See Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir.1985).

6. *Lovely* addressed a claim for compensatory damages arising from physical injuries. The ac-

cident at issue in the case aggravated a preexisting injury to the plaintiff's elbow. The defendant insurance company asserted that it should not be responsible for medical bills and loss of income resulting from the injured elbow. The court found that it was the defendant's burden to establish a causal relationship between the earlier injury and the damages claimed by the plaintiff.

found it difficult to distinguish between the emotional suffering caused by the defendants' behavior, and the suffering caused by prior independent sources. The court reasoned:

Because the causal connection between the harassment and Plaintiffs' emotional trauma is complicated by other factors similarly causing such suffering, the Court finds an award of $2500 in compensatory damages for each Plaintiff appropriate.

■■■■■ Although the district court encountered some difficulty in distinguishing between the plaintiffs' trauma caused by the defendants' harassment and that arising from other causes, it nonetheless found $2500 to be an appropriate sum to compensate each plaintiff. We conclude that despite the difficulty, the trial court was able to determine the damages attributable to the harassment caused by the defendants. The trial court had the opportunity to see and hear the plaintiffs, and no doubt took into account their demeanor as well as other factors, such as their ages, nature of employment, and earnings, in setting the damages amount. Apparently, the court carefully considered the amounts it awarded and, without substantial reasons to the contrary, it would be particularly inappropriate and injudicious for an appellate court to set aside the trial court's judgment under these circumstances. *See Freedman Baking Co.*, 810 F.2d at 11. We see no error in the district court's $2500 award of compensatory damages to each of the plaintiffs.

## V.

■■■■■ The plaintiffs also contend that the district court erred in its failure to award punitive damages. The plaintiffs assert that the district court relied heavily on an incorrect legal standard in refusing to award punitive damages. The court's legal interpretations are subject to plenary review. *See In re Extradition of Howard*, 996 F.2d at 1327.

The plaintiffs rely for their claim to punitive damages on the amendment to Section 706(g) of Title VII, 42 U.S.C. § 1981a. The damage provisions of this amendment provide that a court may award punitive damages to a prevailing party in a Title VII action if the defendant "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *See* 42 U.S.C. § 1981a(b)(1). The amendatory provision permits courts to award damages in cases of intentional discrimination resulting in actual injury or loss in the same circumstances as such awards are permitted under 42 U.S.C. § 1981 for race discrimination. *See* H.R. No. 40(I), 102d Cong., 1st Sess. at 74 (1991).

■■■ Although compensatory damages are available to victims of intentional discrimination under Title VII, a plaintiff must demonstrate that the defendant acted with malice or reckless indifference before he or she can receive punitive damages. *Id.*[7] The legislative history of the Section notes:

Plaintiffs must first prove intentional discrimination, then must prove actual injury or loss arising therefrom to recover compensatory damages, *and must meet an even higher standard (establishing that the employer acted with malice or reckless or callous indifference to their rights) to recover punitive damages.*

H.R.Rep. No. 40(I), 102d Cong., 1st Sess. at 72, (1991) 1991 U.S.C.C.A.N. 610 (emphasis added).

■■■■ Because plaintiffs' claims arise out of a federal statute designed to protect federal rights, federal rules of damages control. "The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the needs whenever a federal right is impaired." *Sullivan v. Little Hunting Park*, 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969).

After hearing the testimony in the instant case, the district court declined to award punitive damages. The court found that the plaintiffs had not sustained their burden of

---

7. The court's analysis is the same for the state causes of action. In Maine, punitive damages are available in a tort action when the defendant acts with malice. *See F.D.I.C. v. S. Prawer & Co.*, 829 F.Supp. 439, 453 (D.Me.1993); *see also Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).

demonstrating that the defendants had acted maliciously or recklessly or callously indifferent to plaintiffs' rights. In so finding, the court explained:

There is no question that Defendants' repeated sexual harassment was offensive. In fact, in many cases, this behavior might be strong evidence of malice or, at least, reckless indifference to Plaintiffs' rights. In this case, however, the Court believes that, the behavior of at least some Defendants was influenced by language, cultural, and educational barriers. With this consideration and all of the other evidence in mind, the Court concludes that Defendants were not acting with either malice or reckless indifference to Plaintiffs' rights. No award of punitive damages is therefore appropriate.

There was no jury in the instant case, and, of course, the trial judge obviously gave no erroneous instructions. The plaintiffs, however, contend that the court nonetheless committed error as a matter of law because it based its decision not to award punitive damages on an erroneous legal predicate—"that the ethnic background [of most of the defendants] is an excuse negating malice or reckless indifference under Section 1981a." Moreover, the plaintiffs argue that even if the judge's legal predicate were correct, there is no evidence whatsoever of record that the defendants suffered from any ignorance of their duty to cease their offensive acts as a result of their ethnic background. As to this alleged deficiency of record, the standard of review is clearly erroneous. *See Reich v. Cambridgeport Air Systems, Inc.,* 26 F.3d 1187, 1188 (1st Cir. 1994).

That the defendants' acts "were patently offensive" and repeated, as the plaintiffs argue, may provide cause for compensatory damages but do not necessarily mandate a finding of punitive damages. Unlike compensatory damages, which are a matter of right to an injured party once liability is found, punitive damages are awarded or rejected in a particular case at the discretion of the fact-finder, in this instance the trial judge. *See Lee v. Southern Home Sites Corp.,* 429 F.2d 290, 294 (5th Cir.1970).

There is no vested right to punitive damages on the part of the plaintiff and where allowed, they are awarded as a matter of public policy to punish outrageous conduct by the defendant or to deter similar conduct in the future. A key feature of punitive damages is that "they are never awarded as of right no matter how egregious the defendant's conduct." *Smith v. Wade,* 461 U.S. 30, 52, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (permitting jury to assess punitive damages in action under § 1983 when defendant's conduct is shown to be motivated by evil intent or involves reckless or callous indifference to the federally protected rights of others).

Punitive damages are assessed as punishment or as an example and warning to others. They are therefore not favored in the law and are allowed only with caution and within normal limits. *Lee,* 429 F.2d at 294; *Aladdin Manufacturing Co. v. Mantle Lamp Co.,* 116 F.2d 708, 717 (7th Cir.1941).

The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, "the infliction of such damages, and the amount thereof are of necessity within the discretion of the trier of the fact."

*Lee,* 429 F.2d at 294 (citations omitted).

In *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194 (1st Cir.1987), this court dealt at length with the appropriateness of a jury award of punitive damages. Writing for this court, Judge Torruella held that even in a jurisdiction which authorizes punitive damages in cases requiring proof of intentional wrongdoing, this does not mean that punitive damages are appropriate in every such case. Rather, "in each case the trier of the fact has the discretion to determine whether punitive damages are necessary, to punish [the defendant] for his outrageous conduct and deter him and others like him from similar conduct in the future." *Id.* at 205 (citations omitted). The court therefore reduced the punitive damages award in a Section 1983 case by 90 percent. *Id.* at 207.

In *Hernández–Tirado v. Artau*, 874 F.2d 866 (1st Cir.1989), this court vacated entirely the district court's award of punitive damages in a Section 1983 case. The court carefully analyzed the Supreme Court's decision in *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632, where the Court made clear that a jury "may" award punitive damages in Section 1983 cases when a defendant has shown "reckless or callous indifference to the federally protected rights of others," as well as when his conduct is "motivated by evil motive or intent." This court observed, however, that in so holding, the Supreme Court did not say that the fact-finder must award punitive damages in every single Section 1983 case that *does* involve an intentional tort. The court concluded that the defendants' intentional misconduct did not rise to the level calling for punishment and deterrence over and above that provided by the compensatory award. It therefore vacated the award of punitive damages observing that "neither the common law, nor the Supreme Court in *Smith*, allows a jury to assess punitive damages in every single instance where it finds an intentional tort; rather, they require conduct that is 'outrageous' either because of a person's 'evil motive' or because of his 'reckless indifference' to the rights of others." *Hernández–Tirado*, 874 F.2d at 869.

■■■■ In sum, the law does not require the fact-finder to award punitive damages in every case under Section 1981a that involves an intentional tort. The plaintiff must show that the defendant acted with malice or reckless indifference to the plaintiff's rights. We believe, however, that heavy reliance on cultural and educational factors is inappropriate in the instant case. Ignorance of the law or of local custom is not a defense under Section 1981a to the alleged offensive conduct of the defendants.

■■■ A defendant's cultural background is not irrelevant in evaluating the appropriateness of punitive damages. In certain circumstances, a defendant's background will likely have an impact on his consciousness of wrongdoing. In the instant case, however, the district court's only explicit reason for denying punitive damages was the cultural, ethnic, and educational background of the defendants, and this is not the dispositive factor. The court did not point to any evidence in the record to support its assumption that the defendants were not acting with reckless indifference to the plaintiffs' rights. In the context of this case and on this record, primary reliance on cultural and educational background is tenuous and appears unsupported. Although the court also considered "all the other evidence," it is not clear from the record what "other evidence" the court considered.

Accordingly, we will remand to the district court for further clarification and explanation as to what evidence supported its decision to deny the plaintiffs punitive damages.

## VI.

In sum, we conclude that the district court properly denied the defendants' motion to lift default and file late answer. Through their default, the defendants waived their right to challenge the plaintiffs' Title VII claim on the basis that the plaintiffs failed to name the individual defendants before the EEOC or the MHRC. Thus, the order of the district court denying the defendants' motions is affirmed.

We also conclude that the district court did not abuse its discretion in arriving at a $2500 compensatory damage award for each plaintiff and this judgment is affirmed. On the issue of punitive damages, the matter is remanded to the district court for clarification and explanation, within thirty days, as to what evidence the court relied upon in declining to award the plaintiffs punitive damages. This court will retain jurisdiction of the case pending the district court's clarification.