### Diane M. CONETTA and Peter Conetta, Plaintiffs,

v.

### NATIONAL HAIR CARE CENTERS, INC., and Robert Puto, Defendants.

### C.A. No. 96–471–L.

United States District Court, D. Rhode Island.

April 27, 1999.

William T. Murphy, Providence, RI, for plaintiff.

William P. Robinson, III, Edwards & Angell, Providence, RI, for defendant.

LAGUEUX, Chief Judge.

When litigants appear before this Court, they deserve a "just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. For the most part, that means they should have their cases heard on the merits. Plaintiffs should make their allegations in a complaint. Defendants should marshal their defenses in an answer. The judge or jury should consider the law and the specific facts of the dispute to reach a fair outcome.

This case is an exception. This case turns, not on how plaintiffs were treated before filing suit, but how defendant dealt with the case after receiving notice of its filing. National Hair Care Centers, Inc. ("NHCC") ignored this case until after a default and default judgment had been entered, in effect frustrating the basic goal set out in the Federal Rules.

Diane M. Conetta alleges that she was discriminated against because of her sex and age when she worked for NHCC. The company received notice of the suit but never appeared in this Court to defend, and, as a result, Diane M. Conetta and Peter Conetta [*hereinafter* collectively "the Conettas"] got a default judgment in the amount of $301,000.00. Much later, NHCC moved to vacate the default based on Fed.R.Civ.P. 55(c) and the judgment based on Fed.R.Civ.P. 60(b)(1). In an April 22, 1998 Report & Recommendation, Magistrate Judge Robert W. Lovegreen suggested vacating the judgment, and the Conettas objected thereto and came to this Court. This Court decided that, in considering a motion to vacate a judgment, a district court reviews a magistrate judge's decision de novo. *See Conetta v. National Hair Care Centers Inc.*, 182 F.R.D. 403, 405–06 (D.R.I. 1998) [*hereinafter Conetta I*].

Since *Conetta I* was decided, the legal landscape has been altered in two ways. First, this Court held an evidentiary hearing on February 1, 1999 [*hereinafter* the "February 1999 hearing"] to expand the record. Second, this Court discovered a flaw in the default judgment. The order mandating the entry of judgment was signed by Magistrate Judge Lovegreen, rather than by the district judge then assigned to this case, Senior Judge Raymond Pettine. After this Court disclosed the problem to the parties in a chambers conference held on the record, NHCC supplemented its motion to vacate to raise the argument that the default judgment is void under Fed.R.Civ.P. 60(b)(4).

Therefore, the issues facing this Court now include:

- whether the default judgment is void under Fed.R.Civ.P. 60(b)(4).
- if not, whether the default judgment should be vacated for excusable neglect under Fed.R.Civ.P. 60(b)(1).
- whether the default should be vacated for "good cause" shown under Fed. R.Civ.P. 55(c).

For the reasons outlined below, this Court grants NHCC's motion to vacate the default judgment because the judgment is void but denies NHCC's motion to vacate the default because it has failed to show "good cause."

I. *Background*

Diane Conetta worked for NHCC as a manager of a hair salon run by NHCC that operated in a Wal–Mart store in Rhode Island. NHCC had many of these salons throughout the country. During her 11 months on the job, Conetta was the oldest employee at this location, and she alleges age and gender discrimination as a result of harassment by her supervisor Robert Puto.

A. *Facts Surrounding The Suit*

The Conettas filed their complaint August 16, 1996 and an amended complaint on December 6, 1996. On December 9, 1996, service of process was made upon CT Corporation in Providence, which was the agent for

service of process for NHCC. The return of service does not state whether the complaint served was the original or amended complaint. Based on evidence adduced at the February 1999 hearing, it is now clear that it was the amended version. (*See* Transcript of February 1, 1999 Hearing at 51 [*hereinafter* Transcript].)

In that amended complaint, Diane Conetta alleged a claim for sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.;* a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.;* and claims under the Rhode Island Fair Employment Practices Act, R.I.G.L § 28–5–1 *et seq.* and the Rhode Island Civil Rights Act of 1990, § 42–112–1 *et seq.* Additionally, she posited state common law claims for assault, negligent infliction of emotional distress, failure to supervise and respondeat superior. Peter Conetta made a claim for loss of consortium.

No answer was filed, and on January 14, 1997, a default was entered against NHCC by a Deputy Clerk of Court. Robert Puto was never served with process. On February 11, 1997, the Conettas filed a motion for entry of judgment by default as to NHCC. That motion was referred to Magistrate Judge Lovegreen because Senior District Judge Pettine was *hors de combat* because of illness. The Magistrate Judge held a hearing on May 14, 1997, at which the Conettas and a psychiatrist testified. On May 15, 1997, Magistrate Judge Lovegreen ordered the entry of a default judgment for Diane Conetta in the amount of $151,000 in compensatory damages and $100,000 in punitive damages and for Peter Conetta in the amount of $50,000.[1] That order was presented to the Magistrate Judge by plaintiffs' counsel. To enforce the judgment, the Conettas filed a second suit on January 5, 1998 against NHCC and Regis Corporation, an entity that purchased NHCC's assets and still owes $2.5 million to NHCC. [The second suit, CA98–003L, is hereinafter referred to as the "Second Suit".]

NHCC made its first appearance in this case on February 9, 1998 when it filed its motion to vacate the default and default judgment. By then, Senior Judge Pettine had retired, and the case was assigned to this writer. The motion was assigned to Magistrate Judge Lovegreen, and he held a hearing on April 13, 1998. In his Report and Recommendation dated April 22, 1998, he opined that NHCC's motion should be granted. As would be expected, the Conettas objected to that decision. This Court heard oral arguments on July 15, 1998 and issued *Conetta I* on November 3, 1998. In that opinion, this Court noted that Magistrate Judge Lovegreen had only considered documentary evidence including affidavits, and that was insufficient under the circumstances. This Court thus concluded that an evidentiary hearing with live testimony was necessary to expand the record.

### B. *The Facts of The Default*

At the February 1999 hearing, the record was supplemented by both testimonial and additional documentary evidence. The primary witnesses were Wayne Riffle, NHCC's president, and Robert Ross, NHCC's attorney from Arkansas. From all the evidence adduced in this case, this Court makes the following findings of fact.

Wayne Riffle is a sophisticated businessman from Little Rock, Arkansas. This Court observed Riffle during the hearing, and he had the demeanor and polish of a successful entrepreneur. He was president of NHCC and had earlier served as its secretary/treasurer. He is a certified public accountant. He acted as a registered agent for NHCC and at least two other corporations. (*See* Transcript at 62–65.) Through NHCC and other ventures, he made deals and jointly-invested with other sophisticated people associated with the Stephens Group, a private conglomerate that includes security underwriting and other businesses. (*See* Transcript 42–44, 63.) An attorney for the Stephens Group, Michael B. Johnson, negotiated

---

1. On June 4, 1997, Clerk of Court, David DiMarzio, by Deputy Clerk, Dawn Delano entered the judgment against NHCC. (A judgment form dated May 29, 1997 was never executed.) Plaintiff alleges that this qualifies as a valid judgment under Fed.R.Civ.P. 55(b)(1). (*See* Section III(B), *infra.*) However, this Court rules below that Magistrate Judge Lovegreen's order was invalid and, thus, the entry of judgment was void.

the purchase of NHCC's assets for Regis Corporation. (*See* Transcript at 45–46.)

Riffle learned of the Conetta case in May 1996 when employees leaving NHCC talked to him about pending cases. Because NHCC was selling most of its assets to Regis, it was firing or transferring almost all its employees. An NHCC employee, Carla Warner, gave Riffle the Conetta file. Riffle intended for a regional manager, Linda Clough, to attend the May 22, 1996 hearing before the Rhode Island Human Rights Commission ("RIHRC"). (*See* Transcript at 79.) However, Warner received a phone call that announced that the RIHRC hearing would be postponed a year. (*See* Transcript at 75.)

On May 24, 1996, Riffle received a letter that confirmed that information, i.e. the hearing, had been rescheduled to May 22, 1997. (*See* Transcript at 9.) Riffle believed that the Conettas could not file any action in court until after the May 1997 hearing. (*See* Transcript at 11–12, 16–17, 60–61, 82.)

By the summer of 1996, Riffle was the only remaining employee of NHCC. (*See* Transcript at 13.) Most NHCC documents went into storage, and the company received mail at a post office box and at Riffle's home. Riffle maintained the company's active files at his home in Arkansas. (*See* Transcript at 25–26.)

On August 26, 1996, Riffle received—through CT Corporation, which forwarded all Rhode Island filings—a Notice of Right To Sue from the RIHRC to Diane Conetta. He signed a return receipt for the package that contained the document. (*See* Plaintiff's Exhibit 2; Transcript 46–49.) On January 21, 1997, Riffle received the amended complaint in this case. He signed a return receipt for the package that contained that document, (*see* Plaintiff's Exhibit 3; Transcript at 49–52), and Ross testified that the amended complaint was in the file that Riffle gave to Ross in 1997, (*see* Transcript at 100). On January 20, 1997, Riffle received the Motion for Entry of Default. His wife, Bobbie Riffle, signed for a Federal Express package that contained the motion. (*See* Plaintiff's Exhibit 1; Transcript 27–29.) Riffle deposited all these documents into a file that he kept at his home and in which he was collect-

ing information about the Conetta discrimination claim.

In May 1997, Riffle turned the problem and the file over to Ross, a partner in the Little Rock law firm of Grobmyer, Ramsay and Ross. He went to Ross either because he received notice of the default or in preparation for the expected May 22, 1997 RIHRC hearing.

After a cursory look at Riffle's file, attorney Ross recognized that a default had been entered in this Court. He, in turn, referred the case to a recent law school graduate working in his office, Buck Canyon Gordon. Gordon drafted a motion to vacate, but neither he nor Ross did anything to get it filed in this Court. The young man left the firm for several months to take the Arkansas bar examination, and although Gordon returned to Ross' firm as an associate, the Conetta motion languished in a file drawer. (*See* Transcript at 87–89.)

In January 1998, an attorney for the Regis Corporation, Michael Johnson, received the complaint in the Second Suit and contacted Riffle. Johnson and Riffle spoke to Ross. Ross called the Providence law firm of Edwards & Angell and retained it as local counsel to file the motion to vacate which was accomplished on February 9, 1998.

### III. *The Default Judgment Is Void*

█ A defendant can move to vacate a judgment if it is void. That can be done within a reasonable time of the judgment's entry. *See* Fed.R.Civ.P. 60(b)(4).

### A. *The Magistrate Judge's "Order"*

█ Article III of the United States Constitution does not allow a magistrate judge to order the entry of a final judgment. *See United States v. Flaherty,* 668 F.2d 566, 585 (1st Cir.1981); *Horton v. State Street Bank & Trust Co.,* 590 F.2d 403, 404 (1st Cir.1979). A district court judge may assign a case to a magistrate judge to hear evidence regarding the amount of a default judgment under 28 U.S.C. § 636(b)(3); however, issuing an order to enter judgment is an entirely different matter. The district judge must review the magistrate judge's recommenda-

tions, and only the district judge can order the entry of the final judgment.

■ This constitutional principle is so basic that Magistrate Judge Lovegreen's May 15, 1997 order had no legal significance. NHCC could not have appealed it to the First Circuit. *See Horton,* 590 F.2d at 404. By definition, his order was totally invalid.

Therefore, the default judgment entered by the Clerk based on Magistrate Judge Lovegreen's order was void.

## B. *The Clerk of Court's Filing*

The Conettas' counsel makes a lawyerly effort to save the default judgment by relying, not on Magistrate Judge Lovegreen's order but on the June 4, 1997 form filed by the Clerk of Court. The Conettas argue that this form constitutes a valid default judgment under Fed.R.Civ.P. 55(b)(1).

■ Rule 55(b) gives a plaintiff two options to pursue a default judgment. The Clerk can enter judgment when the claim "is for a sum certain or for a sum which can by computation be made certain[.]" Fed. R.Civ.P. 55(b)(1) [*hereinafter* "sum certain" will be used for this entire phrase]. In "all other cases," the district court must decide the issue. Fed.R.Civ.P. 55(b)(2).

The Conettas argue that Magistrate Judge Lovegreen's May 15, 1997 order reduced the claim to a sum certain, namely $301,000. NHCC had 10 days to appeal to the district court just as it would for any order or report & recommendation issued by a magistrate judge. So the Conettas argue that Magistrate Judge Lovegreen's calculation became final when NHCC, which had not received notice because it had never made an appearance, did not appeal. That made the claim for a sum certain, the Conettas contend, so the Clerk of Court correctly entered the judgment pursuant to Fed.R.Civ.P. 55(b)(1).

The Conettas do not characterize the clerk's form correctly. The June 4, 1997 form is explicit that the judgment entered was based on a "Decision by the Court." This is a basic court judgment form created to be used when a district judge issues an order to enter judgment.

■ However, even if the Clerk of Court had acted as the Conettas argue, their logic runs afoul of the law. This Court holds as a matter of law that a clerk cannot enter judgment under Fed.R.Civ.P. 55(b)(1) after a magistrate judge or a district judge has held an evidentiary hearing under Fed.R.Civ.P. 55(b)(2). A case is either for a "sum certain" or not. A party must choose one of the two procedures offered by Fed.R.Civ.P. 55(b) because the Conettas' logic would allow magistrate judges to end run the Constitution and order the entry of judgment in almost every defaulted case.

■ This appears to be an issue of first impression in the First Circuit, but that is probably so because it is so clear that Rule 55(b)'s two procedures are mutually exclusive. By the plain language of the rule, a case is either "for a sum certain" under (b)(1) or one of the "all other cases" under (b)(2). *See* Fed.R.Civ.P. 55(b). The clerk only has power to enter a default *judgment* without judicial action when the claim is liquidated for a sum certain. *See Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir.1980); *Combs v. Coal & Mineral Management Servs. Inc.,* 105 F.R.D. 472, 474 (D.D.C.1984). *See also Volstad v. Collings,* 983 F.2d 1080, 1993 WL 7251, *2 (9th Cir.1993). Where it is not, the judgment can only be entered (or ordered entered) by a district court judge. *See Jackson,* 636 F.2d at 835; *Combs,* 105 F.R.D. at 474.

The Conettas' claim was not for a sum certain. The Conettas needed to proceed under Fed.R.Civ.P. 55(b)(2) to have the amount of the judgment determined by a district judge (who could assign part of that task to a magistrate judge). Therefore, the default judgment entered in this case by the Clerk of Court is void.

## IV. *The Default Is Valid*

### A. *The General Rule of "Good Cause"*

■ The standard for vacating a default is "good cause." *See* Fed.R.Civ.P. 55(c). A district court should resolve doubts in favor of a party seeking relief from the entry of default. *See Leshore v. County of Worcester,* 945 F.2d 471, 472 (1st Cir.1991).

No precise formula is mandated, and each case turns on its own unique facts. However, the First Circuit has set guidelines that a district court should apply for determining "good cause":

1) whether the default was willful
2) whether setting it aside would prejudice the adversary
3) whether a meritorious defense is presented
4) the nature of the defendant's explanation for the default
5) the good faith of the parties
6) the amount of money involved
7) the timing of the motion.

 *See McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 503 (1st Cir.1996) (citing *Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir.1989)).[2] A district court abuses its discretion where it ignores a material factor, when it relies on an improper factor or where it makes a serious mistake in weighing the factors. *See id.*

 Where a party fails to appear in court after receiving notice, the party's explanation or excuse is crucial to deciding whether default was willful or the neglect was excusable. *See, e.g., General Contracting & Trading, Co., LLC v. Interpole, Inc.,* 899 F.2d 109, 112 (1st Cir.1990) (examining the excuse); *United States v. One Urban Lot,* 885 F.2d 994, 998 (1st Cir.1989) (same).

 A district court can find a lack of "good cause" where the party "misplaced" the papers and negligently ignored filing deadlines, *see General Contracting & Trading Co., LLC,* 899 F.2d at 112, or where the party ignored the case in the hope it "would all go away," *see McKinnon,* 83 F.3d at 504. Generally, the First Circuit allows vacation of the default where the responsible party has done nothing intentional to cause the default. *See Leshore,* 945 F.2d at 472–73 (upholding vacation of default where defendant's attorney's illness caused failure to respond); *Coon,* 867 F.2d at 76–78 (vacating default where defendant had no notice and did nothing to conceal his address).

**2.** *McKinnon* involved a default judgment, but both the district court and the First Circuit applied the "good cause" standard from Fed. R.Civ.P. 55(c).

## B. *Applied to this Case*

 This Court will weigh the seven factors from *McKinnon.* It has already been found that NHCC has some meritorious defenses and that the Conettas would not be prejudiced by a trial in 1999. *See Conetta I,* 182 F.R.D. at 406–07. The amount of money involved is uncertain because this Court will determine the amount after taking evidence at a contested hearing. If anything, the large possible award should have put NHCC on heightened notice. *See Business Credit Leasing v. City of Biddeford,* 978 F.2d 767, 769 (1st Cir.1992). The other four factors all weigh heavily against vacating the default. This Court finds that NHCC willfully defaulted, in bad faith, and with no reasonable explanation and that NHCC waited more than four months after the default to even hire a lawyer to deal with the matter.

This Court believes that Riffle willfully ignored the lawsuit filed in this Court. At the February 1999 hearing, Riffle said that he did not notice that the amended complaint that he received in January 1997 referred to the United States District Court rather than the RIHRC. (*See* Transcript at 16.) However, that testimony is not credible.

Riffle, as explained above, is a sophisticated businessman who ran a national company and served as a registered agent for several corporations. He received at least three separate mailings from CT Corporation regarding this lawsuit: the notice of right to sue, the amended complaint and the motion for default. Two came by certified mail, and Riffle signed for them. One came by Federal Express, and his wife signed for it. The CT Corporation forms are models of clarity. They list the United States District Court for the District of Rhode Island and the name of the Conettas' attorney, and what was required to be done.

Based on the testimony and exhibits, this Court concludes that Riffle knew the Conettas had filed the amended complaint in this District Court. There is no doubt to resolve. Riffle knew this suit was underway. To be-

lieve Riffle, this Court would have to believe that he read all three notices enough to know they related to Diane Conetta but not enough to see "right to sue" or "United States District Court." Based on Riffle's testimony and obvious sophistication, that just is not credible.

Obviously, Riffle placed the paperwork in the Conetta file without referring it to counsel because he thought the entire dispute was on hold until the May 22, 1997 hearing before the RIHRC. Riffle repeated that belief several times during the February 1999 hearing. (*See* Transcript at 11–12, 16–17, 60–61, 82.) NHCC's counsel emphasized this point with his final question to Riffle:

> MR. ROBINSON: Sir, in your prior experience with administrative matters, with the exception of the Conetta matter, had you known of any discrimination matter in any American state that went to court proceedings before there was a hearing before the administrative agency.

(Transcript at 82.) After an objection was overruled, Riffle answered, "No, sir." (Id.) In short, Riffle thought, based on his experience in running this company, that he could ignore this federal lawsuit because the state agency still had jurisdiction.

Riffle was dead wrong. The Conettas had RIHRC's permission to sue, and they did. The pith of this case is that Riffle was not negligent or careless. He did not lose the paperwork or forget to speak to a lawyer. He chose to ignore this lawsuit based on his own flawed experience and view of the law. That choice was an intentional, willful act. *See McKinnon*, 83 F.3d at 504 (choice not to respond was willful). Riffle's company had been sold for millions of dollars, and the Conettas' complaint was a nuisance for a man taking a sabbatical from working. He did not want to deal with it until he felt he had to.

A party that willfully ignores a case and hopes it will go away can be denied the vacation of a default. *See McKinnon*, 83 F.3d at 503–04. The *McKinnon* Court noted that defendants in that case had been served

with the complaint; that they were capable of hiring counsel; and that a related administrative hearing put several of them on notice of the pending legal problem. *See id.* That evidence was sufficient to support the district court's finding that the defendants lacked good faith because they had known of the pending legal problem but hoped that it "would all go away." *See id.* at 504.

■ Although NHCC did cooperate with its counsel once it hired Ross, the company's position is significantly similar to that asserted by the defendants in *McKinnon:*

- NHCC willfully ignored the suit and was capable of retaining counsel before it did

- NHCC waited approximately 16 weeks after the default to hire a lawyer and 55 weeks to file a motion to vacate, compared to six weeks in *McKinnon*

It is true in this case that much of the 55-week delay can be attributed to the negligence of attorneys Ross and Gordon. Although a lawyer's delay can be imputed to a client, *see United States v. One Lot of $25,721*, 938 F.2d 1417, 1422 (1st Cir.1991) (lawyer's delay grounds for refusing to remove default judgment), this Court sees nothing willful in the attorneys' missteps. However, even if Ross and Gordon had filed the motion to vacate as soon as Riffle gave them the case, that would have come four months after default was entered.

■ NHCC willfully defaulted and showed neither good faith nor a valid explanation. This Court concludes that Riffle knew a lawsuit was filed in this federal district court and decided to ignore it. As a result, NHCC hired lawyers four months after the default and then did nothing when the lawyers sat on the case for almost a year.[3] Those *McKinnon* factors far outweigh the factors that mitigate in NHCC's favor. Therefore, this Court concludes that NHCC has not shown "good cause" to vacate the default.

---

3. This Court notes that the one-year time limit in Fed.R.Civ.P. 60(b) is a maximum. The First Circuit has found no good cause where a defen- dant waited as few as six weeks to file, so a defendant's motion is not automatically approved if it is filed within a year.

### V. *"Excusable Neglect" and the Default Judgment*

Because the default judgment is void, the "excusable neglect" issue under Fed.R.Civ.P. 60(b)(1) is moot. In any event, it should be clear from the discussion herein that this Court would not have found "excusable neglect" to vacate the default judgment. That is because Rule 60(b)(1)'s standard is higher than the standard for Rule 55 that requires defendant to prove "good cause". *See Leshore,* 945 F.2d at 472; *United States v. One Urban Lot,* 885 F.2d at 997. *See also Conetta I,* 182 F.R.D. at 406–07 (setting out the Rule 60(b)(1) standard). Therefore, Riffle's intentional acts that convince this Court that no "good cause" exists to vacate the default would have also kept NHCC from showing that "excusable neglect" could be a basis for vacating the default judgment.

### CONCLUSION

The default judgment entered by the Clerk based on Magistrate Judge Lovegreen's order is void. Therefore, it is vacated. However, the default was properly entered and NHCC has not shown "good cause" to vacate it.

For the preceding reasons, this Court grants the motion to vacate the default judgment and denies the motion to vacate the default. The Conettas may now move for the entry of judgment, and this Court will conduct a hearing to determine the amount of the judgment that should be entered. Of course, NHCC's attorneys may participate at such hearing. Therefore, the hearing, in effect, will be a contested bench trial on the issue of damages only.

It is so Ordered.