Cotumanama PENA, Debtor.

Cotumanama Pena, Plaintiff–Appellee,

v.

Myrta Gonzalez and Santos Gonzalez,
Defendants–Appellants.

BAP No. MB 07–059.
Bankruptcy No. 04–19402–WCH.
Adversary No. 05–01393–WCH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 12, 2008.

Harold M. Gorach, on brief for Defendants–Appellants.

Gordon N. Schultz, on brief for Plaintiff–Appellee.

Before VOTOLATO, LAMOUTTE, and VAUGHN, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

Contumanama Pena ("Appellee"), the Chapter 13 debtor, filed an adversary proceeding against Myrta Gonzalez and her father, Santos Gonzalez ("Appellants"). Appellants failed to answer the complaint, were defaulted, and their Emergency Motion to Vacate the Order of Default was denied. After an evidentiary hearing to determine and assess damages, the bankruptcy court issued a bench ruling on the merits ("Bench Ruling"), stating its findings and conclusions, and entered a separate judgment assessing damages ("Damages Judgment"). The Appellants filed a timely appeal from (1) the Order denying their Motion to Vacate Default; (2) the Order Denying Emergency Treatment of the Motion to Vacate Default;[2] (3) the Damages Judgment; and (4) the Bench

2. Although they appealed the order denying emergency treatment of the Motion to Vacate Default, the Appellants did not address, either in their brief or at oral argument, why the bankruptcy court erred in denying emergency treatment. Accordingly, that issue is waived. *See Mountain Peaks Fin. Servs. v. Shepard (In re Shepard)*, 328 B.R. 601, 604 (1st Cir. BAP 2005) ("The Court of Appeals has made it abundantly clear that failure to brief an argu-

Ruling. Upon consideration of the briefs, the oral arguments and for the reasons discussed below, the rulings of the bankruptcy court are AFFIRMED.

## BACKGROUND

This case involves three related loan transactions evidenced by three promissory notes executed by the Appellee and his business partner, Geremias S. Rodriguez Santana, payable to Myrta Gonzalez[3] to provide working capital for the operation of a food store—Santiago Market. The loans were secured, *inter alia*, by a mortgage on the business property jointly owned by the Appellee and Santana. The Appellants started foreclosure proceedings, and the Appellee sought an injunction to prevent the sale. The state court denied the injunction request, and the Appellee commenced this bankruptcy case.

The Appellants filed a proof of claim, and the Appellee objected and filed counterclaims. The Appellants filed a response and moved to strike the counterclaims, arguing that they should have been brought in an adversary proceeding.[4] The bankruptcy court granted the Appellants' motion to strike, without prejudice to the Appellee asserting his rights in an adversary proceeding. The Appellee filed a complaint alleging that, without his knowledge, the Appellants charged interest on the three loans at a rate known as 18% add-on,[5] which violated the Massachusetts usury statute (Mass. Gen. Laws ch. 271, § 49), and that the Appellants' acts constituted unfair or deceptive acts or trade practices in violation of Mass. Gen. Laws ch. 93A, and common law fraud and deceit. The Appellants were served with the complaint,[6] but failed to file an answer or other

---

ment constitutes a waiver for purposes of appeal") (citations omitted).

3. The first note dated May 3, 1996, was in the amount of $69,300; the second note dated October 10, 1996, was in the amount of $15,400; and the third note (undated but acknowledged to have been executed about November 30, 1999) was in the amount of $103,968.08. All three notes were executed solely in favor of Myrta Gonzalez; Santos Gonzalez was not a named payee in any of the notes. However, Mr. Gonzalez testified that he essentially negotiated the loans and collected the mortgage payments.

4. Both Attorney Franklin Prizer (who entered an appearance on the Appellants' behalf in the bankruptcy case) and another attorney, Peter Davis (who was representing the Appellants in two other litigation matters but later withdrew), were listed as the Appellants' counsel on the motion to strike and their response to the Appellee's counterclaims.

5. Under the "add-on" method, interest (at a specified rate) on the full principal sum for the full term of the loan is determined in advance. That sum is then "added-on" to the principal sum borrowed as of the date of the loan. Consequently, interest remains constant on the principal borrowed, notwithstanding that the principal sum is reduced

each month during the term of the loan. The add-on method of charging interest makes the effective rate of interest for each of the three loans more than 35%.

6. The Appellee's counsel first attempted to serve the Appellants through Attorney Peter Davis. However, Davis returned the pleadings to the Appellee's counsel, stating that he had "not filed an Appearance in this action, and service would have to be on either counsel of record or the parties themselves." The Appellants claim that they did not receive a copy of that letter, and, therefore, did not know that Attorney Davis was not representing them in connection with the adversary proceeding. Appellee's counsel then forwarded the summons and complaint to the Suffolk County Sheriff's Department for service on each of the Appellants. According to the returns of service, the Sheriff's Department served the Appellants on July 19, 2005, by leaving copies of the complaint, summons and cover sheet at the Appellants' residence, and by mailing them to the Appellants' residence via first class mail. In addition, on July 28, 2005, the Appellee's counsel sent correspondence to Attorney Prizer enclosing a copy of the summons and returns of service and advising him that an answer was due on August 18, 2005.

responsive pleading. The Appellee then filed a request for entry of default pursuant to Federal Rule of Civil Procedure 55(a),[7] and the default was entered.

Two weeks later, the Appellants filed a Motion to Vacate Default and a late answer to the adversary complaint, in which they demanded a jury trial. The Appellants argued that good cause existed to vacate the default due to confusion about who represented them, and that their (mistaken) belief that the motion to strike the Appellee's counterclaim was a sufficient answer to the complaint. The Appellee argued that the Appellants failed to show good cause, since they do not allege a meritorious defense, and because reversal of the order of default would cause undue prejudice by requiring him to incur substantial costs in preserving his position. After a hearing, the bankruptcy court found that the Appellants had not demonstrated "good cause" for vacating the order under Rule 55(c) and denied the Motion to Vacate Default.

The Appellee then filed a Rule 55(b)(2) motion requesting an evidentiary hearing to determine and assess damages. At the hearing, six witnesses testified,[8] twenty-four exhibits were admitted, and four affidavits of direct testimony were submitted as ordered by the bankruptcy court. In addition, at the conclusion of the damages hearing, the bankruptcy court gave the parties an opportunity to submit post-trial briefs and propose findings of fact. The Appellants submitted 238 proposed findings of fact.[9]

After considering all of the foregoing, the bankruptcy court issued a Bench Ruling giving its findings and conclusions, summarized below:

1. The allegations of the complaint were sufficient to establish a cause of action under each of the counts.

2. The Appellants used the so-called "add-on" methodology in calculating the interest charged on each loan.

3. Using the "add-on" methodology, the effective rate of interest on the May 3, 1996, note was 35.71%; the October 10, 1996, note was 35.27%; and the November 30, 1999, note was 35.08%.

4. The Appellants represented to the Appellee that interest was being charged at 18% per annum, intending that he rely upon the representation, that he did so justifiably, and was damaged thereby. In addition, the Appellants never disclosed to the Appellee the effect of the add-on interest and the resulting elevated interest rates. Such conduct was fraudulent and constituted a willing and knowing violation of Chapter 93A of the Massachusetts General Laws.

5. At the time of the May 3, 1996, and October 10, 1996, loan transactions, the Appellants did not notify the Massachusetts Attorney General of their intent to engage in usurious interest practices, pursuant to Section 49(a) of Chapter 271 of the Massachusetts General Laws.

6. As to all three loans, the Appellants failed to comply with the record keeping

---

**7.** All references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

**8.** Namely, (1) the Appellee, (2) his expert witness, Bennett E. Shifman, C.P.A., (3) his business partner, Geremias Santana, (4) his attorney, Gordon Schultz, (5) the Appellant, Santos Gonzalez, and (6) Franklin Prizer, the

Appellants' counsel with respect to the making of the loans.

**9.** In their brief and reply brief (totaling 77 pages), the Appellants demanded repeatedly that the bankruptcy court address separately every one of their proposed findings of fact, many of which involved issues relating to liability, which were all *res judicata*.

provisions of Section 49(d) of Chapter 271 of the Massachusetts General Laws.

7. As to the May 3, 1996 note, there is no balance stated. The Appellee made at least 34 of the 36 payments due on the note and, as a consequence, overpaid his obligation to repay the amount actually advanced, plus simple interest at 18%, by $12,105.25, and that the Appellee is entitled to recover from the Appellants the overpayment.

8. The Appellee is entitled to recover from the Appellants interest on the overpayment for the loss of the use of such funds, at 4% per annum for the eight years from the maturity date of the note to the judgment date, in the amount of $3,873.68.

9. The Appellee is entitled to recover double damages from the Appellants for a willful and knowing violation of Section 11 of Chapter 93A of the Massachusetts General Laws in the amount of $15,978.93.

10. The total amount due to the Appellee from the Appellants, excluding attorneys' fees and expert witness fees set forth below, is $31,957.86, which is $12,105.25 for overpayment, plus $3,873.68 use of funds interest, plus $15,978.93 in Chapter 93A damages.

11. As a further consequence of the Chapter 93A violations, the Appellee is entitled to recover from the Appellants (a) $46,801.75 in attorneys' fees and $868.02 in costs; and (b) $2,575 in expert witness fees.

12. The Appellee elected to waive the further pursuit of any monetary judgment against the Appellants for overpayments that might be due under the October 10, 1996, and November 30, 1999, notes.

13. No amounts remain due and owing on the October 10, 1996, note or November 30, 1999, note. Those notes are declared void, and are canceled.

14. As a result of the foregoing, the Appellee and Santana are entitled to a discharge of any mortgage, security interest, lien or other encumbrance serving as security for the notes.

The bankruptcy court then entered the Damages Judgment assessing the following damages against the Appellants: (a) $31,957.86 with interest at 4.30% per annum; (b) attorneys' fees of $46,801.75 and costs of $868.03; and (c) expert witness fees of $2,575.00. This appeal followed.

## JURISDICTION

 Before addressing the merits of a dispute, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

 The Damages Judgment and Bench Ruling are final orders because, together, they resolve all of the issues between the parties in the adversary proceeding. *See Caterpillar Fin. Servs. Corp. v. Braunstein (In re Henriquez)*, 261 B.R. 67, 70 (1st Cir. BAP 2001); *see also Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 558 (1st Cir.1986) (a bankruptcy court's order is final if it completely resolves all of the issues pertaining to a

discrete claim). In addition, although the order denying the Motion to Vacate Default was interlocutory when entered, because it did not determine the damages amount or otherwise finally resolve the dispute between the parties, it became final when the bankruptcy court entered the Damages Judgment. *See Tringali,* 796 F.2d at 559 (noting that entry of a final, appealable order enables appellant to request review of earlier nonfinal decisions upon which the final decision rests).

## STANDARD OF REVIEW

■ The Panel generally reviews findings of fact for clear error and conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir. 1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719 n. 8 (1st Cir.1994).

## DISCUSSION

### I. Order Denying Motion to Vacate Default

■ We first consider whether the bankruptcy court erred in denying the Appellants' Motion to Vacate the Default pursuant to Rule 55(c). Rule 55(c), made applicable to this case pursuant to Bankruptcy Rule 7055, provides:

For good cause shown, the court may set aside an entry of default and, if judgment by default has been entered, likewise set it aside in accordance with Rule 60(b).[10]

Rule 55(c).

### A. The Standard

■ Under Rule 55(c), the determination of whether a party may be relieved

from entry of default or default judgment rests within the trial court's sound discretion. *See Coon v. Grenier,* 867 F.2d 73, 75 (1st Cir.1989). Consequently, the Panel reviews the bankruptcy court's refusal to vacate the order of default for abuse of discretion. *See CRS Steam, Inc. v. Eng'g Res., Inc. (In re CRS Steam, Inc.),* 233 B.R. 901, 904 (1st Cir. BAP 1999); *Zeitler v. Zeitler (In re Zeitler),* 221 B.R. 934, 937 (1st Cir. BAP 1998).

Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*CRS Steam,* 233 B.R. at 904 (quoting *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988)).

### B. Applying the Standard

■ The First Circuit Court of Appeals has held that setting aside an entry of default under Rule 55(c) is a case-specific determination that includes consideration of a number of factors, including: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion." *McKinnon v. Kwong Wah Rest.,* 83 F.3d 498, 503 (1st Cir.1996) (citing *Coon,* 867 F.2d at 76). The bankruptcy court concluded in this case that the Appellants had not demon-

---

**10.** The Rule 55(c) "good cause" threshold for setting aside an entry of default is lower and more easily overcome than the showing necessary for relief from judgment under Rule 60(b). *See Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir.1989); *Viera Aviles v. Suiza Dairy*

*Corp.,* 206 F.R.D. 338 (D.P.R.2002). Since judgment was not entered in this case at the time the Motion to Vacate Default was considered, the more rigorous standard for setting aside a judgment under Rule 60(b) does not apply. *See Coon,* 867 F.2d at 76.

strated "good cause" for vacating the order under Rule 55(c) and denied the Motion to Vacate Default. Although the bankruptcy court did not specifically identify the factors it considered in refusing to vacate the entry of default, the questioning and arguments presented at the hearing focused upon many of the factors set forth in *McKinnon*, which are by no means all inclusive. *Id.* at 503. The First Circuit also explained that the examination of these factors "must be made in a practical, commonsense manner, without the rigid adherence to, or undue reliance upon, a mechanical formula." *Id.* Based upon the entire record, it is the opinion of this Panel that the trial judge used his discretion properly in applying the standard.

After considering the evidence and arguments, the bankruptcy court acknowledged that the Appellants were done a "disservice" by their prior counsel, which resulted in "significant delays," but ultimately concluded that the Appellants had failed to show good cause for vacating the default. Based upon the entire record the Panel may, and does, infer that the bankruptcy court considered and weighed the appropriate factors when it rendered its decision. Accordingly, we conclude that the bankruptcy court did not abuse its discretion in refusing to vacate the Order of Default.

## II. Bench Ruling and Damages Judgment

The Appellants argue that the bankruptcy court erred in issuing the Bench Ruling and entering the Damages Judgment. Specifically, they argue that the bankruptcy court erred: (1) by awarding damages to the Appellee; (2) by failing to address each and every one of the Appellants' proposed findings of fact; (3) by concluding that Mass. Gen. Laws ch. 271, § 49, applied; (4) by concluding that Mass. Gen. Laws ch. 93A applied; (5) by failing to grant the Appellants' demand for a jury trial; and (6) by denying each and every objection as to evidence. Below, we discuss each issue seriatim.

### A. Award of Damages

The Appellants argue that the bankruptcy court erred in awarding *any* damages to the Appellees. The bankruptcy court's determination of damages is reviewed on appeal under a clearly erroneous standard. *See Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.)*, 212 B.R. 10, 20 (D.Mass.1997).

As set forth above, the entry of default established the Appellants' liability on the counts alleged in the complaint. *See Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc. (In re The Home Rest., Inc.)*, 285 F.3d 111, 114 (1st Cir. 2002) (citations omitted) ("There is no question that, default having been entered, each of plaintiff's allegations of fact must be taken as true and each of its claims must be considered established as a matter of law."). However, since the amount of the Appellee's damages were not ascertainable based upon the allegations in his complaint, the bankruptcy court held a hearing to assess damages. *Id.* at 114 ("A hearing may be required, however, to set damages when the amount is in dispute or is not ascertainable from the pleadings."); *see also* Rule 55(b)(2) (unless a plaintiff's claim is for a sum certain or a sum that can by computation be made certain, "the party entitled to judgment by default shall apply to the court therefor"); *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir.2003) ("While a default … constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is susceptible of mathematical computation.") (citations omitted).

After a three-day evidentiary hearing, the bankruptcy court entered judgment

awarding damages to the Appellee. The Appellants do not argue that the bankruptcy court's computation and assessment of damages was erroneous. Rather, they argue that the Appellee was not entitled to *any* damages; i.e., they are now arguing that they are not liable to the Appellee. The order of default established the Appellants' liability on all counts in the complaint, and the Appellants' persistence in arguing liability is meritless and frivolous. The Appellants have not met their burden of establishing that the bankruptcy court's judgment should be reversed. *See Mountain Peaks Fin. Servs. v. Shepard (In re Shepard)*, 328 B.R. 601, 603–604 (1st Cir. 2005); *Schifano v. Razzaboni (In re Schifano)*, 2005 WL 3946868 at *4, 2005 Bankr.LEXIS 1439 at *11 (1st Cir. BAP Aug. 1, 2005) (citing *Espiefs v. Settle*, 14 B.R. 280 (D.N.H.1981)). First, they have not produced copies of each of the exhibits presented at trial, and because of that, the Panel is unable to review the entire body of evidence that was before the bankruptcy court. Moreover, the Appellants have presented nothing to show that the bankruptcy court's award of any damages was erroneous. It is the conclusion of the Panel that the bankruptcy court's findings and conclusions are entirely plausible in light of the existing record before the Panel, and that there was no error below.

## B. Proposed Findings of Fact

The Appellants argue that the bankruptcy court erred by failing to address each and every one of their proposed findings of fact, and that it "made no findings as to damages." At the conclusion of the damages hearing, the Appellants submitted 238 proposed findings of fact, many of which involved issues relating to the Appellants' liability. Although the bankruptcy court was entitled to consider the proposed findings submitted by the parties, it was not required to adopt, reject, or

address any of them. Indeed, the practice of inviting or requiring proposed findings and/or conclusions is generally discouraged, as the court's findings and conclusions must ultimately represent the judge's own determination(s). *See Las Colinas, Inc. v. Banco Popular de Puerto Rico (In re Las Colinas, Inc.)*, 426 F.2d 1005, 1008–1009 (1st Cir.1970).

Due to the default, the Appellants were not entitled to litigate any of the issues presented in the complaint or to present any affirmative defenses. *See In re The Home Rests.*, 285 F.3d at 114 (noting that when a party declines to participate in the judicial process, it gives up the right to contest liability). Therefore, the only issue before the bankruptcy court was whether the unchallenged facts stated a legitimate claim for recovery, and the amount of that recovery. *See Marshall v. Stratus Pharms., Inc.*, 51 Mass.App.Ct. 667, 749 N.E.2d 698 (2001). The bankruptcy court only needed to make findings of fact which related to those determinations, and its refusal to address the Appellants' proposed findings of fact did not constitute error.

Moreover, the Appellants' shotgun approach fails to identify on appeal which proposed findings were erroneously disregarded, and the basis for those assertions. The burden is on the Appellants to show that the bankruptcy court's factual findings were clearly erroneous, *see* Bankruptcy Rule 8013, and the Appellants have fallen far short of that burden.

## C. Mass. Gen. Laws ch. 271, § 49

The Appellants argue, without supporting authority, that the bankruptcy court erred in finding that Massachusetts General Laws chapter 271, § 49 ("the Massachusetts usury statute"), "is applicable to the instant action." Under the Massachusetts usury statute, any persons who charge interest rates exceeding 20% per

annum are guilty of criminal usury unless they first notify the Massachusetts Attorney General of their intent to engage in such a transaction and maintain records of the transaction. *See id.* Courts have considerable discretion in granting relief for violations of the usury statute, and they generally consider a number of factors in determining the appropriate remedy. *See id.*

■■■ The default established the Appellants' liability under the Massachusetts usury statute, and, therefore, the Appellee was entitled to damages for the violation. The bankruptcy court concluded that because of the Appellants' violations of the Massachusetts usury statute with regard to the May 3, 1996 note, the Appellee was entitled to recover from the Appellants the $12,105.25 he overpaid on the note. The Appellants have offered nothing to show that the $12,105.25 award was entered erroneously.

### D. Mass. Gen. Laws ch. 93A, § 11

■■■ The Appellants argue that the bankruptcy court erred in concluding that Mass. Gen. Laws ch. 93A ("Chapter 93A") "is applicable to the instant action." Under Chapter 93A, a person engaged in the conduct of trade or commerce who has suffered a loss of money or property as a result of an unfair or deceptive trade practice may bring an action for damages and equitable relief, with the possibility of double or triple damages and attorneys' fees for "willful or knowing" violations. *See* Mass. Gen. Laws ch. 93A, § 11. Because the usury statute is a public policy statute covered by the Code of Massachusetts Regulations,[11] a violation of the Massachusetts usury statute constitutes a per se violation of Chapter 93A. *See In re Tavares,* 298 B.R. 195, 203 (Bankr.D.Mass. 2003).

■■■ Under Chapter 93A, successful claimants are entitled to recover their actual damages, plus double or treble the actual damages suffered if the offending conduct was willful or knowing. *See Prof'l Servs. Group, Inc. v. Town of Rockland,* 515 F.Supp.2d 179, 197 (D.Mass.2007) (citing *Anderson v. Comcast Corp.,* 500 F.3d 66, 74 (1st Cir.2007)). Successful claimants are also entitled to their reasonable attorneys' fees and costs. *See id.*

The Complaint alleges that the Appellants' violations of the usury statute and willful and knowing deceit regarding the interest rates charged on the loans constituted unfair and deceptive acts in violation of Chapter 93A. The default clearly established the Appellants' liability under Chapter 93A and, therefore, they are liable for damages resulting from said violations. Since the default also established that the Appellants committed a knowing or willful violation of Chapter 93A, the bankruptcy court's award of double damages and attorneys' fees and costs was appropriate.

### E. Jury Trial

■■■ The Appellants argue that the bankruptcy court erred in denying its demand for a jury trial, which was first made in their late-filed answer to the Appellee's complaint. Pursuant to Rule 55(b)(2), the bankruptcy court had authority to conduct an evidentiary hearing to determine dam-

11. The applicable provision provides:
Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of [Chapter 93A] if:
(1) It is oppressive or otherwise unconscionable in any respect; ...
(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection....
Mass. Regs.Code tit. 940, § 3.16.

ages, so long as it "preserv[ed] any federal statutory right to a jury trial." Rule 55(b)(2); Bankruptcy Rule 7055. Rule 55(b)(2) does not contain an inherent jury requirement; rather, it preserves the right to a jury only when that right is protected by federal statute. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003). Where the parties have not made such a request prior to entry of default, the "[d]efendants do not have a constitutional right to a jury trial following entry of default." *Id.; see also Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir.1974) ("Nor does the appellant have a constitutional right to a jury trial under these circumstances since the Seventh Amendment right to trial by jury does not survive a default judgment"); *Benz v. Skiba, Skiba & Glomski*, 164 F.R.D. 115, 116 (D.Me. 1995) ("Case law dating back to the eighteenth century ... makes it clear that the constitutional right to jury trial does not survive the entry of default"); *Applied Capital, Inc. v. Gibson*, 558 F.Supp.2d 1189, 1202 (D.N.M.2007). Thus, the Appellants had no constitutional right to a jury trial, and were only entitled to one if prescribed by some federal statute. The Appellants have failed to identify a specific statute that guarantees them a right to a trial by jury. The bankruptcy court did not err in denying the request for a jury trial.

### F. Objections

 The Appellants claim that the bankruptcy court erred "by denying each and every objection as to evidence and/or motion to strike" at the damages hearing. A trial court is afforded broad discretion over the admission of evidence and is entitled to substantial deference with regard to its determinations of relevance. *See, e.g., Nora Beverages, Inc. v. The Perrier Group of Am., Inc.*, 269 F.3d 114, 125 (2d Cir.2001) (citing *Reilly v. NatWest Mkts. Group Inc.*, 181 F.3d 253, 266 (2d Cir. 1999); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir.1997)). An appellant bears the heavy burden of showing that the trial court's evidentiary rulings were manifestly erroneous, and, even then, reversal is warranted only where affirmance would be "inconsistent with substantial justice." *Id.* (citations omitted); *see also Shepard*, 328 B.R. at 604. Here, the Appellants failed to identify which evidentiary rulings were erroneous, or tell us why they were erroneous. Again, the Appellants have not met their burden.

### III. Request for Attorneys' Fees and Costs

 In his brief, the Appellee requests attorneys' fees and costs incurred in connection with this appeal, pursuant to Bankruptcy Rule 8014.[12] Because Bankruptcy Rule 8014 only provides for the recovery of costs, the Appellee is not entitled to attorneys' fees under that rule, and even if we construed the Appellee's request as one for damages and costs for a frivolous appeal under Bankruptcy Rule 8020,[13] that request would fail. Under

---

12. Bankruptcy Rule 8014 provides, in relevant part:

 Except as otherwise provided by law, agreed to by the parties, or ordered by the district court or the bankruptcy appellate panel, costs shall be taxed against the losing party to an appeal.
 Bankruptcy Rule 8014.

13. Bankruptcy Rule 8020 provides:

If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.
Bankruptcy Rule 8020.

Bankruptcy Rule 8020, the Panel has authority to award damages and costs against a party for a frivolous appeal, but a prerequisite to awarding sanctions under Bankruptcy Rule 8020 is that the movant must meet the procedural requirements of the Rule. *See Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 734 (1st Cir. BAP 2002). Bankruptcy Rule 8020 requires that sanctions be requested by a separately filed motion or by notice from the Panel, and notice and the opportunity to respond must be given prior to any determination by the court. *See* Bankruptcy Rule 8020. The requirement of a separately filed motion is strict, and failure to comply results in the denial of a request for sanctions. *Id.*

Because the Appellee has not met the procedural requirements of Bankruptcy Rule 8020, the request, as presented, is insufficient.

### CONCLUSION

Based on the foregoing, the bankruptcy court's Orders are **AFFIRMED,** and the Appellee's request for sanctions is **DENIED.**