**SUPPLIES & SERVICES, INC., Debtor.**

**Supplies & Services, Inc., Plaintiff–Appellee,**

**and**

**Banco Popular De Puerto Rico, Intervenor–Appellee,**

v.

**NACCO Industries, Inc., NACCO Materials Handling Group, Inc., and Yale Materials Handling Corporation, Defendants–Appellants.**

BAP Nos. PR 10–085, PR 11–011.
Bankruptcy No. 10–07157–BKT.
Adversary No. 10–00162–BKT.

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 23, 2011.

Michael P. Flanagan, Esq., Benjamin E.F.B. Waller, Esq., Winterville, NC, and Ramón Coto–Ojeda, Esq., on brief, for Defendants–Appellants.

Carmen Conde, Esq., and Robert Freedman, Esq., on brief, for Plaintiff–Appellee, Supplies & Services, Inc.

Rafael Pérez–Bachs, Esq., and Monique J. Diaz–Mayoral, Esq., on brief, for Intervenor–Appellee, Banco Popular de Puerto Rico.

Before HILLMAN, FEENEY, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Supplies & Services, Inc. is the "Debtor" in a chapter 11 case in the District of Puerto Rico. NACCO Materials Handling Group, Inc., doing business as Yale Materials Handling Corporation ("NMHG"),[1] is a creditor in that case and asserts a first perfected security interest in the Debtor's inventory and related assets. The Debtor brought an adversary proceeding seeking a declaration that the security agreement is ineffective under North Carolina law and that NMHG's security interest is void under 11 U.S.C. § 544. In that action, the

---

1. NMHG, NACCO Industries, Inc. and Yale Materials Handling Corporation were named as defendants in the underlying adversary proceeding. Throughout the proceedings before the bankruptcy court, they jointly filed various pleadings, including the notice of appeal, but have always asserted that NMHG is the real and only party to this action as NACCO Industries, Inc. was not a party to any of the documents referenced in the Debtor's adversary complaint and the Debtor did not assert any claims against it. They also assert that Yale Materials Handling Corporation is not a proper party because it is an unincorporated division of NMHG and is not a separate legal entity. As a result, we will refer only to NMHG throughout this opinion, even though some pleadings were filed in the name of all three entities.

bankruptcy court denied NMHG's motion for summary judgment and granted the motions for summary judgment filed by the Debtor and Banco Popular de Puerto Rico ("BPPR"), an intervenor and holder of a competing security interest. The bankruptcy court also denied NMHG's motion to set aside the default entered against them for failing to file a timely answer. NMHG has appealed each order. We **REVERSE** the order granting the motions for summary judgment filed by the Debtor and BPPR. We also **REVERSE** the order denying the motion to set aside default. We **REMAND** the case to the bankruptcy court for further action consistent with this opinion. We also **DENY** BPPR's motion to strike portions of NMHG's reply brief.

### BACKGROUND [2]

Prior to the bankruptcy, the Debtor's primary business was the lease, sale, and service of forklifts and other materials handling equipment. In September 1969, the Debtor and Eaton Yale & Towne International, Inc. ("Eaton") entered into an agreement whereby the Debtor agreed to market and service certain products in the region in exchange for a commission on sales of those products. Yale Materials Handling Corporation, now a division of NMHG, eventually acquired Eaton's rights and interests under the agreement.

In 2002, NMHG and the Debtor entered into a floor plan agreement that enabled the Debtor to purchase inventory under certain credit facilities. Section 1.03(c) of the floor plan agreement provides:

> Borrower will execute and file any and all financing statements, registrations, or similar documents necessary under

the law of Puerto Rico to perfect, register, place on the public record, or otherwise establish or strengthen Creditor's rights to and in the Collateral under applicable law, and Borrower shall use its best efforts to maintain all of the foregoing in full force and effect.

Section 7.01 of the floor plan agreement also provides the following:

> *Governing Law:* (a) All questions of the interpretation or meaning of this Agreement, the rights, duties, and obligations of the parties, and resolution of disputes between the parties, shall be governed by the substantive law of the State of North Carolina, U.S.A., but not its choice of law rules. The parties further agree that their rights and responsibilities shall be governed by the Uniform Commercial Code as the same is in effect at all relevant times in the State of North Carolina and shall not be governed by the Convention on International Contracts for the Sale of Goods.

Contemporaneously with the floor plan agreement, the Debtor executed a security agreement granting NMHG a security interest in the Debtor's machinery, inventory, and equipment. Section 9 of the security agreement also provides:

> 9. INTERPRETATION. The validity, construction and enforcement of this Agreement are determined and governed by the laws of the State of North Carolina. All terms not otherwise defined have the meanings assigned to them by Articles I and IX of the Uniform Commercial Code. . . .

On January 28, 2003, NMHG filed a financing statement relating to security agreement with the Puerto Rico Department of State.[3] NMHG did not file any

---

**2.** The parties stipulated to the facts in a Joint Statement of Uncontested Facts set forth in their Pre–Trial Order.

**3.** We accept that this was the appropriate index for perfection under Puerto Rico law

because there has been no assertion to the contrary.

other financing statement or continuation statement relating to the floor plan agreement or the security agreement in Puerto Rico or in any other jurisdiction.[4]

The Debtor filed a chapter 11 petition in August 2010. Thereafter, NMHG filed a motion seeking to lift the automatic stay in connection with its collateral, which the Debtor opposed. NMHG also moved to prohibit the Debtor from using cash collateral, and a final hearing on both motions was scheduled for November 17, 2010.

In the meantime, the Debtor commenced an adversary proceeding containing two counts. The first sought a declaration that the security agreement is ineffective under North Carolina law and the second count sought a determination that NMHG's security interest is void under 11 U.S.C. § 544. After granting an extension, the bankruptcy court set December 4, 2010, as the deadline for filing responsive pleadings.

During the November 17, 2010 hearing on the motions to lift the automatic stay and prevent the use of cash collateral, the parties agreed that there were no material facts in dispute and that the adversary proceeding could be determined as a matter of law. On that basis, the bankruptcy court ordered the parties to submit simultaneous motions for summary judgment in the adversary proceeding by December 7, 2010. The bankruptcy court also scheduled a status conference in the adversary proceeding for January 12, 2011. At the same time, the bankruptcy court ordered BPPR, who claimed a perfected security interest in certain machinery, inventory, cash, and cash collateral, to intervene in the adversary proceeding.[5]

NMHG did not file responsive pleadings in the adversary proceeding before or after the return date of December 4, 2010. Following the bankruptcy court's instructions, however, NMHG did file a timely motion for summary judgment on December 7, 2010. In its motion, NMHG asserted, among other things, that the agreements contain a general choice of law provision, but that Puerto Rico law governs perfection. It also asserted that its security interest remains perfected because financing statements are effective for ten years in Puerto Rico.

In its timely summary judgment motion, the Debtor asserted, among other things, that the agreements between the parties required the application of North Carolina law, that North Carolina law limits the validity and duration of a filed financing statement to five years unless the creditor timely files a continuation statement, and that NMHG never filed a continuation statement with respect to the security agreement and floor plan agreement. On that basis, the Debtor argued that NMHG's security interest had terminated before the commencement of the bankruptcy case and that, pursuant to 11 U.S.C. § 544, any security interest claimed by NMHG was null and void.

BPPR also timely filed a motion for summary judgment. BPPR adopted the Debtor's argument that NMHG's security interest was no longer valid on the petition date. BPPR also asserted that it has a perfected senior security interest in the

---

**4.** In 2007, the parties executed another series of agreements, including a promissory note, a forbearance agreement, a security agreement, and a guaranty agreement from the Debtor's principals to NMHG. In connection with these documents, NMHG filed a financing statement with the Puerto Rico Department of State on February 16, 2007. These agreements are not, however, at issue in this appeal.

**5.** There is nothing in the record indicating a final disposition of the motions to lift the automatic stay and prevent the use of cash collateral at that time.

Debtor's entire inventory of equipment and parts upon the commencement of the case and that, at best, NMHG's security interest covered no more than the equipment and parts which were on open account on the petition date.

On December 9, 2010, the Debtor filed a motion seeking a default judgment due to NMHG's failure to answer the complaint. The next day, the bankruptcy court ordered that a default be entered against NMHG because of its failure to answer the complaint. On the same day, the bankruptcy court entered its opinion and order denying NMHG's motion for summary judgment and granting the motions for summary judgment filed by the Debtor and BPPR. In rendering its decision, the bankruptcy court determined that pursuant to the choice of law clause of the security agreement, NMHG was obligated to file a continuation statement pursuant to North Carolina law and that, having failed to do so, NMHG's security interest "is now expired, ineffective, unperfected and shall be considered a general unsecured claim" and BPPR "has a senior secured priority interest over Debtor's entire inventory of equipment and parts." Implicitly in the bankruptcy court's decision is a determination of both counts of the complaint.

On December 21, 2010, NMHG filed a notice of appeal from the summary judgment order. It also sought a stay pending appeal from the bankruptcy court and requested that the bankruptcy court set aside the entry of default pursuant to Fed. R.Civ.P. 55(c), applicable in bankruptcy proceedings through Fed. R. Bankr.P. 7055. Attached to NMHG's motion to set aside entry of default was an answer to the complaint. After a hearing, the bankruptcy court denied the motion to set aside the entry of default, stating that "the opinion and order stands." It also denied the request for a stay pending appeal.

NMHG then filed a timely appeal of the bankruptcy court's order denying its motion to set aside the entry of default.

## JURISDICTION

■ We have jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ Generally, a bankruptcy court's order denying a motion for summary judgment is not a final order. *See CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.)*, 233 B.R. 901 (1st Cir. BAP 1999). However, an order denying a party's motion for summary judgment that also grants an opposing party's cross motion for summary judgment is a final order because it ends the litigation on the merits. *See Ragosa v. Canzano (In re Colarusso)*, 295 B.R. 166, 171 (1st Cir. BAP 2003), *aff'd*, 382 F.3d 51 (1st Cir.2004).

■ A bankruptcy court's refusal to set aside an entry of default under Fed. R.Civ.P. 55(c) prior to entry of judgment is generally interlocutory and not appealable. *See Iowa State Univ. Research Found., Inc. v. Greater Continents Inc.*, 81 Fed. Appx. 344, 348 (Fed.Cir.2003); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir.1998); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 855 (8th

Cir.1996). Therefore, as a preliminary matter, we ordered NMHG to show cause why its appeal of the order denying its motion to set aside the default should not be dismissed for lack of jurisdiction. Upon consideration of NMHG's response, we determined that order to be a final order because it left nothing for the court to do but execute the judgment.

## STANDARD OF REVIEW

We apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010). Generally, orders granting summary judgment are reviewed *de novo*, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. *See Gosselin v. Webb*, 242 F.3d 412, 414 (1st Cir. 2001) (citing *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 611 (1st Cir.2000)); *see also Jones v. Svreck (In re Jones)*, 300 B.R. 133, 137 (1st Cir. BAP 2003); *Rijos v. Vizcaya (In re Rijos)*, 263 B.R. 382, 388 n. 5 (1st Cir. BAP 2001). Therefore, we will apply *de novo* review to the summary judgment order. We will review the bankruptcy court's refusal to set aside the default for abuse of discretion. *See Pena v. Gonzalez (In re Pena)*, 397 B.R. 566, 574 (1st Cir. BAP 2008).

## DISCUSSION

### I. The Summary Judgment Standard

Fed.R.Civ.P. 56 ("Rule 56") is applicable in adversary proceedings in bankruptcy cases pursuant to Fed. R. Bankr.P. 7056. Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a).[6] Therefore, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Borges v. Serrano–Isern*, 605 F.3d 1, 4–5 (1st Cir.2010); *Estrada v. Rhode Island*, 594 F.3d 56, 62 (1st Cir. 2010). Here, the parties agreed that there were no material facts in dispute and that the issue was appropriate for summary judgment disposition.

### II. The Choice of Law Issue

The parties' dispute centers around the question of whether Puerto Rico law or North Carolina law applies to the perfection of NMHG's security interest. Under North Carolina law, perfection by financ-

---

**6.** Pursuant to an amendment to Rule 56 that became effective on December 1, 2010 (after the commencement of this adversary proceeding), the summary judgment standard now appears in Rule 56(a) rather than, as it formerly did, Rule 56(c). *See* Fed.R.Civ.P. 56 Advisory Committee Notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 U.S. Supreme Court orders, the amended rule governs all proceedings commenced on or after December 1, 2010, and all proceedings then pending "insofar as just and practicable." Noting that the amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens," the First Circuit has held that applying the amended rule in a pending appeal is just and practicable and would not work a manifest injustice. *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir.2011) (citing Committee on Rules of Practice and Procedure, Report of the Judicial Conference, at 14 (Sept. 2009)). Accordingly, it is appropriate for us to decide the present appeal with reference to the summary judgment standard set forth in the amended version of Rule 56.

706

ing statement is limited to five years unless it is renewed.[7] The effective period under Puerto Rico law is ten years.[8] The bankruptcy court applied North Carolina law pursuant to the choice of law provision in the security agreement, and granted summary judgment to the Debtor and BPPR because the five-year perfection period had lapsed prior to the commencement of this case. NMHG argues that the bankruptcy court erred because Puerto Rico law governs perfection and the validity of the agreements is not at issue. If it is correct, its security interest would have been perfected when the case was commenced. The Debtor and BPPR concede that Puerto Rico law governs perfection, but insist that this case involves the validity of the security interest under North Carolina law.

We conclude that Puerto Rico law governs perfection and that the bankruptcy court erred in applying North Carolina law.

## A. The Choice of Law Clause

■ As noted above, section 9 of the security agreement contains the following choice of law provision:

9. INTERPRETATION. The validity, construction and enforcement of this

Agreement are determined and governed by the laws of the State of North Carolina. All terms not otherwise defined have the meanings assigned to them by Articles I and IX of the Uniform Commercial Code....

Choice of law clauses in contracts are *prima facie* valid and generally enforced unless the resisting party shows that enforcement would be unreasonable and unjust, or that the clause is invalid due to fraud, overreaching, or a strong public policy. *See Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir.2010) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 632, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The parties' choice of law in this case relates to the "validity, construction and enforcement" of the agreements, and it will be honored because it has not been challenged. As discussed below, the concern here is over the lapse in *perfection*, an issue that does not affect the *validity* of the underlying agreements. Under North Carolina law, perfection is generally governed by the law of the jurisdiction where the debtor and/or collateral is located.[9] Further, as noted above, the parties agreed in section 1.03(c) of the floor plan

7. The North Carolina statute provides, in relevant part:
 (a) Five-year effectiveness.—Except as otherwise provided in subsections (b), (e), (f), and (g) of this section, a filed financing statement is effective for a period of five years after the date of filing....
 (c) The effectiveness of a filed financing statement lapses on the expiration of the period of effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (c) of this Code section....
 N.C. Gen.Stat. § 25–9–515.

8. The Puerto Rico statute provides, in relevant part:
 ... [A] filed financing statement is effective for a period of ten (10) years from the date of filing. The effectiveness of a filed financ-

ing statement lapses on the expiration of the 10–year period unless a continuation statement is filed prior to the lapse.
 P.R. Laws Ann. tit. 19, § 2153.

9. Under North Carolina law, where a debtor and/or collateral is "located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." N.C. Gen.Stat. § 25–9–301. This section dictates that, because the Debtor and the subject collateral were (at all relevant times) located in Puerto Rico, the laws of Puerto Rico govern all issues relating to the perfection of NMHG's security interest, including the duration of the financing statement.

agreement that Puerto Rico law would govern perfection.

## B. Validity vs. Perfection

 Perfection of a security interest governing the type of collateral present in this case is achieved by the filing of a financing statement. Perfection relates to the interest of third parties in the collateral; it does not affect the validity of the security agreement between the debtor and the secured party. "[A] defective financing statement does not affect the validity of the security interest between the parties." WILLIAM C. HILLMAN, DOCUMENTING SECURED TRANSACTIONS: EFFECTIVE DRAFTING & LITIGATION § 4:5 n. 41 (2d ed. 2002 & Supp. 2011) (citing *Whitmore & Arnold, Inc. v. Lucquet,* 233 Va. 106, 353 S.E.2d 764 (1987)); *see also In re Guilbert,* 176 B.R. 302, 307 (D.R.I.1995) ("[P]erfection does not relate to the validity of the [security] agreement."). Validity and perfection are entirely independent. "The attached security interest is valid as between the parties, has priority over a general creditor, but, unless perfected, is subject to the rights of many others acquiring interests in the property." HILLMAN, *supra,* at § 4:5. On the other hand, "[t]o acquire rights valid against third parties, it is necessary that the security interest be perfected." *Id.* at § 4:6. A security agreement's validity is based upon attachment and enforceability, but not perfection. "While 'attachment' relates to the creation and enforceability of a security interest between the parties to the transaction, 'perfection' is an additional step which makes the security interest effective against third parties." *Advanced Analytics Lab., Inc. v. Envtl. Aspecs, Inc. (In re Envtl. Aspecs, Inc.),* 235 B.R. 378, 385 (E.D.N.C.1999) (quoting *Thompson v. Danner,* 507 N.W.2d 550, 554 (N.D.1993)); *see also In re L.M.S. Assocs., Inc.,* 18 B.R. 425, 429 (Bankr.S.D.Fla.1982) ("Perfection does not affect the rights and obligations between a debtor and his secured creditor, but relates to rights among competing creditors or others with interests in the collateral."). Thus, a security agreement can be valid between the parties without being perfected.

 Nonetheless, the Debtor and BPPR insist that lapse of perfection affects the validity of the underlying security agreement. But, as established above, validity and effectiveness relate to the relationship between the debtor and the secured party. Perfection relates to third parties. Therefore, lapse of perfection likewise relates to third parties and does not impact the validity and effectiveness of a security agreement. "The purpose of filing a financing statement is to perfect a security interest, and, thus, attain additional protection against conflicting claims in the same collateral.... Allowing a financing statement to lapse does not invalidate the security interest," but rather upon lapse the security interest becomes unperfected. *See Frank v. James Talcott, Inc.,* 692 F.2d 734, 737 (11th Cir.1982) (explaining further that unperfected interest would still be enforceable as between the debtor and creditor, but it could lose priority against third party creditors).

 Therefore, as a lapse of a financing statement relates solely to the perfection of the security interest, and in no way implicates the validity of the security agreement, the laws of the jurisdiction governing the perfection of the financing statement should apply to a lapse of the financing statement. In this case, Puerto Rico law governs perfection. Due to the bankruptcy court's erroneous application of North Carolina law, we conclude that the bankruptcy court erred in: (1) granting summary judgment in favor of the Debtor and BPPR and against NMHG; (2) holding that NMHG's security interest had lapsed and "is now expired, ineffective, unperfected and shall be considered a

general unsecured claim"; and (3) determining that BPPR "has a senior secured priority interest over Debtor's entire inventory of equipment and parts."

### III. Order Denying Motion to Vacate Default

 NMHG argues that the entry of default was erroneous and that the bankruptcy court abused its discretion when it refused to vacate the default. Rule 55(a) provides: "when a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend,* and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a) (emphasis supplied). According to NMHG, entry of default was not appropriate because it had otherwise defended against the adversary proceeding by filing its motion for summary judgment as instructed by the bankruptcy court. NMHG claims that "just cause" existed for the bankruptcy court to set aside the default. We agree.

 Pursuant to Rule 55(c), the bankruptcy court may set aside an entry of default for "good cause." Fed.R.Civ.P. 55(c). The determination of whether a party may be relieved from an entry of default rests within the trial court's sound discretion, and should not be overturned absent an abuse of that discretion. *See Coon v. Grenier,* 867 F.2d 73, 75 (1st Cir. 1989); *In re CRS Steam, Inc.,* 233 B.R. at 904; *Zeitler v. Zeitler (In re Zeitler),* 221 B.R. 934, 937 (1st Cir. BAP 1998).

 The First Circuit has held that setting aside an entry of default under Rule 55(c) is a case-specific inquiry, and the court should consider a number of factors, including: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion." *McKinnon v. Kwong Wah Rest.,* 83 F.3d 498, 503 (1st Cir.1996) (citing *Coon,* 867 F.2d at 76). In refusing to set aside the default, the bankruptcy court stated that "the opinion and order stands" and that it was not going to set aside the default as "the matters are now before the Bankruptcy Appellate Panel." It does not appear that the bankruptcy court considered any of the other factors set forth by the First Circuit. This apparent failure suggests an abuse of discretion, particularly in light of: (1) the defense mounted by NMHG in its timely summary judgment motion; and (2) the defense raised in the answer NMHG filed with its motion to set aside the default.[10] We conclude, under the unique circumstances of this case, that NMHG's filing of a summary judgment motion at the direction of and within the time period set by the bankruptcy court satisfied the "otherwise defend" clause of Rule 55(a) and that good cause existed to vacate the default.

### IV. BPPR's Motion to Strike Portions of NMHG's Reply Brief

BPPR filed a motion seeking to strike portions of NMHG's reply brief on August

---

10. By its very language, Rule 55(a)'s "or otherwise defend" clause is broader than a mere failure to plead. *See* Fed.R.Civ.P. 55(a). Therefore, the filing of a motion for summary judgment can defeat a motion for default. *See Rashidi v. Albright,* 818 F.Supp. 1354, 1355–56 (D.Nev.1993) (finding a motion for summary judgment sufficient to satisfy the "otherwise defend" requirement under Rule 55 because "it speaks to the merits of the case and demonstrates a concerted effort and an undeniable desire to contest the action"), *aff'd,* 39 F.3d 1188 (9th Cir.1994); *Ivy v. Thornton (In re Thornton),* 419 B.R. 787, 790 (Bankr.W.D.Tenn.2009) (citing cases).

5, 2011, nine days after this case was submitted for review on the briefs and almost eleven weeks after the subject brief was filed. As those portions of NMHG's reply brief did not factor into our decision today, we deny the motion to strike.

### CONCLUSION

We **REVERSE** the order granting summary judgment to the Debtor and BPPR and **REVERSE** the order denying NMHG's motion to set aside the default. The matter is **REMANDED** to the bankruptcy court for further action consistent with this opinion. We also **DENY** BPPR's motion to strike portions of NMHG's reply brief.